IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO.: 2:18-CV-174-(WOB-CJS)

SELECTIVE INS. CO. OF
SOUTH CAROLINA                                               PLAINTIFF

VS.                  **MEMORANDUM OPINION AND ORDER**

MIAMI VALEY PAPER TUBE CO.,
ET AL.                                                      DEFENDANTS

This matter is before the Court on several motions for summary judgment, which the Court previously took under submission following oral arguments. (Docs. 76, 77, 78). Having given the matter further study, the Court now issues the following Memorandum Opinion and Order.

*Factual and Procedural Background*

A. **The Injury**

Defendant Crown Services, Inc. ("Crown") is a staffing agency that entered into a labor contract with Defendant Miami Valley Paper Tube Company ("Miami Valley"). (Doc. 69-1 at ¶ 9). The contract required Crown to provide employees to Miami Valley and obtain workers' compensation insurance, while Miami Valley was required to provide a safe workplace. (Doc. 67 at ¶¶ 15, 21-22; Doc. 60-1 at ¶ 11).

Crown assigned Kristian Collins ("Collins") to work at Miami Valley pursuant to that staffing contract. (Doc. 67 at ¶¶ 15, 21-

22). While working at Miami Valley's factory, Collins suffered a scalp avulsion and broken neck when her hair "became entangled in a cutting machine." (*Id.* at ¶ 16). Crown and its insurer, defendant American Zurich Insurance Company ("American Zurich"), paid nearly two million dollars in workers' compensation benefits on behalf of Collins. (Doc. 60-2 at ¶ 13).

The injury precipitated several lawsuits, including the current one before the Court. First, Collins filed suit against Miami Valley in Kentucky state court alleging that Miami Valley was grossly negligent[1] by creating unsafe work conditions at the factory that led to her injury. (Doc. 67 at ¶¶ 17-18). Second, Crown and American Zurich filed suit against Miami Valley in Ohio state court, alleging breach of contract for failing to provide a safe workplace to Crown's workers. (Doc. 60-2 at ¶¶ 4-13, Doc. 67 at ¶ 20). Crown and American Zurich also allege indemnification and subrogation. (Doc. 60-2 at ¶¶ 16, 19).

Plaintiff Selective Insurance Company ("Selective") has provided coverage for both lawsuits pursuant to two insurance policies it issued to Miami Valley: the "Commercial Liability Insurance Policy" and the "Workers' Compensation and Employers Liability Insurance Policy." (Doc. 67 at ¶ 33). None of the defendants argue that coverage is triggered under the workers'

---

[1] Collins also had asserted an intentional tort claim, but voluntarily dismissed it in February 2020. (Doc. 88-1 at 2).

2

compensation policy, and thus the only relevant policy is the "Commercial Liability Insurance Policy." That policy has two types of coverages: commercial general liability coverage (CGL) and umbrella coverage. The only difference between the two policies are the policy limits, and thus the two coverages are referred to jointly as the "CGL policy." (Doc. 73-1 at 6; Doc. 1-3).

### B. Status of State Court Lawsuits

Substantial discovery has occurred in each of the state court lawsuits, but neither have yet been resolved. (Doc. 76 at 2). Crown and American Zurich's action ("the Crown action"), which was originally filed in state court in Cuyahoga County, Ohio, has been refiled in Hamilton County, Ohio. (Doc. 98).

With respect to Collins's lawsuit against Miami Valley ("the Collins action"), the Kentucky state court recently dismissed Collins's case. (Doc. 88-1). Collins has appealed. (Doc. 88).

### C. The Current Action

The third lawsuit related to Collins's injury is the current action. Here, Selective seeks a declaratory judgment that the insurance policies it issued to Miami Valley do not provide coverage nor obligate Selective to defend the two state court actions filed against Miami Valley. (Doc. 67 at 24).

Following oral arguments held on September 29, 2020, this Court held that the coverage issues related to the Collins action would be held in abeyance pending a decision from the Kentucky

3

Court of Appeals, inasmuch as such decision may impact the questions before this Court. (Doc. 93). However, the Court indicated that it would proceed to decide the coverage issues related to the Crown action.

On October 26, 2020, Miami Valley filed a supplemental memorandum suggesting that the Court should now also hold in abeyance the coverage issues related to the Crown action. (Doc. 98). Selective opposes this suggestion (Doc. 100). For the reasons previously stated at oral argument, the Court will proceed to rule on the coverage issues underlying the Crown action.

### *Analysis*

**A. Legal Standards**

> **i. *Choice of Law***

In a diversity action such as this one, the Court applies "the substantive law of the forum state and federal procedural law." *Hoven v. Walgreen Co.*, 751 F.3d 778, 783 (6th Cir. 2014); Fed. R. Civ. P. 57. Thus, all arguments are evaluated using Kentucky substantive law and the Federal Rules of Civil Procedure.

> **ii. *Summary Judgment Standard***

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a)–(c); *Anderson v. Liberty*

4

*Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). "The summary judgment standard does not change simply because the parties presented cross-motions." *Profit Pet v. Arthur Dogswell, LLC*, 603 F.3d 308, 311 (6th Cir. 2010). The "court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (citations and internal quotation marks omitted).

### iii. *Insurance Policy Interpretation and the Duties to Defend and Indemnify*

"A policy of insurance is to be construed liberally in favor of the insured...." *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 227 (Ky. 1994). If any provision of the policy is ambiguous, the Court will use the "reasonable expectations doctrine" to interpret the policy in a way most favorable to the insured's reasonable expectations. *Id.* However, "where not ambiguous, the ordinary meaning of the words chosen by the insurer is to be followed." *James Graham Brown Found. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991).

Under Kentucky law, an insurer's duty to defend its insured is broader than its duty to indemnify. *James Graham Brown Found., Inc.*, 814 S.W.2d at 280. "The insurer has a duty to defend if there is any allegation which potentially, possibly or might come within the coverage of the policy." *Id.* at 279 (internal citations

5

omitted). This determination is made by comparing the allegations in the underlying complaint with the terms of the insurance policy. *Id.* "The determination of whether a defense is required must be made at the outset of the litigation" by analyzing the complaint and known facts. *Id.*

### iv. *"Occurrence Requirement"*

The CGL policy only covers liability stemming from a "bodily injury" caused by an "occurrence" as caused by an "accident." Selective first argues that Crown's complaint does not allege an "occurrence." This argument requires a brief summation of Kentucky's cases analyzing whether an "accident" occurred for purposes of triggering coverage under a CGL policy.

In *Bituminous Cas. Corp. v. Kenway Contr., Inc.*, 240 S.W.3d 633, 635-36 (Ky. 2007), an employee of a construction company was sent to destroy a carport, but he misunderstood the scope of the planned demolition and instead tore down much of the adjoining property. *Id.* at 636. The Kentucky Supreme Court reasoned that an intentional action may nonetheless cause unintentional damages. *Id.* at 638-39. Even though the employee intentionally operated the demolition equipment, the construction company never intended to destroy anything but the carport, and thus the event was an accident which triggered coverage. *Id.* at 639, 642.

In *Cincinnati Ins. Co. v. Motorists Mut Ins. Co.*, the Kentucky Supreme Court analyzed whether the faulty construction of a house

6

was an "accident." 306 S.W.3d 69, 71-75 (Ky. 2010). Reasoning that merely focusing on the intent of the insured would be illogical, the court analyzed the issue using the "doctrine of fortuity." The doctrine of fortuity examines not only the intent of the insured, but the control of the insured. If the insured had control over the event, then the event was not a "chance event beyond the control of the insured [and] beyond the power of any human being" to cause or control and thus not an accident, even if the insured had not intended to cause the resulting damages. *Id.* at 76.

The court reasoned the homebuilder had complete control over how the home was built, and thus the faulty construction of the home was not a "fortuitous, truly accidental, event." *Id.* at 76. If such an event were an accident, CGL insurance policies would effectively become performance bonds. *Id.* at 75.

The court recognized the fortuity test differed from the test used in *Bituminous*. *Id.* at 77. However, this was because *Bituminous* was "readily factually distinguishable from the case at hand because [*Bituminous*] was not a faulty construction case." *Id.* at 77. With respect to control, the court reasoned that the

> quick destruction of a residence is manifestly a completely different undertaking than the protracted improper construction of a residence. The home construction in the case at hand occurred over a period of weeks; the mistaken destruction [in *Bituminous*] occurred in a short flurry of activity on only one day. Because of this inescapable material factual difference, [*Bituminous*] is not controlling on the narrow issue presented in this case: whether a claim of faulty

7

> construction may qualify as an 'occurrence' under a standard CGL policy.

*Id.* at 77. Thus, the court held that "a claim for faulty workmanship, in and of itself, is not an "occurrence" under a CGL specifically "because a failure of workmanship does not involve the fortuity required to constitute an accident." *Id.* at 79-80.

The court again applied the fortuity test in *Martin/Elias Properties, LLC v. Acuity*, 544 S.W.3d 639 (Ky. 2018). In *Martin/Elias*, a subcontractor failed to adequately renovate the basement of a house, and the house needed extra repairs. *Id.* at 640. The subcontractor's insurance company denied coverage on the basis that the faulty workmanship of the subcontractor was not an occurrence because the subcontractor had control over the basement's renovation. *Id.* at 641.

Reasoning that the subcontractor had full control over his work, the Kentucky Supreme Court held the defective basement was not truly an accident but rather an "unintended consequence of poor workmanship." *Id.* at 643. On the other hand, "had the damage to the property resulted from fire caused by [the subcontractor's] knocking over a kerosene lamp, it would clearly be an accident. [The subcontractor] would not intend to knock the lamp over and knocking it over by accident would be outside his control." *Id.* at 644.

8

In *American Mining Insurance Company v. Peters Farms, LLC*, 557 S.W.3d 293 (Ky. 2018), a mining company mined coal under the mistaken belief the coal belonged to it. *Id.* at 297-98. This event failed both prongs of the fortuity test and thus was not an accident. *Id.* at 298. Even though the company was mistaken as to who owned the coal, the Kentucky Supreme Court reasoned the company intended to mine the coal that it took out of the ground. *Id.* at 295. *Id.* at 297-98. Additionally, the company had control over the coal's extraction which occurred over the course of several months. *Id.* at 298.

The court also distinguished *Bituminous*: the mining company had intended its employees to mine all the coal taken from the ground, while the construction company in *Bituminous* had only ever intended to destroy the carport. *Id.* at 297-98. Consequently, the court held that *Bituminous* had no bearing on the case, and the court held it "remains binding precedent in Kentucky insurance law." *Id.*

Turning to the Crown complaint, (Doc. 60-2), it alleges three causes of action: breach of contract, indemnification, and subrogation. Selective contends that Crown's lawsuit is contractual in nature and thus Miami Valley's liability to Crown does not stem from "bodily injury." On the other hand, Crown and Miami Valley contend that the "genesis of [Crown's claims] claims

9

arise out of bodily injury to Collins" and thus is covered under the CGL policy. (Doc. 76-1 at 9).

Selective's argument focuses too much on the theory of recovery and rather than how any potential liability was created. The liability and damages stemming from the alleged breach would not exist but for the "bodily injury" that Collins's suffered. Per the terms of the policy, the liability is sufficiently related to a "bodily injury" to trigger coverage.

However, even if Crown's complaint does allege liability stemming from a "bodily injury," the CGL policy only covers "occurrences" which, in turn, require an "accident." Selective argues that in Kentucky,[2] a breach of contract claim cannot be an "accident."

Selective's argument is well-taken. Like the faulty construction cases detailed above, a party has direct control over how they fulfill obligations they incur by contract. Breaching a contract should not be an "accident" covered by a CGL policy, as the contracting party generally has control over how the contract

---

[2] Crown and American Zurich contend that Ohio law should be used because the staffing agreement states that Ohio law is to be used in interpreting the staffing agreement. That may very well be true for determining whether a breach occurred; however, the issue here is whether the allegations in Crown's lawsuit trigger coverage under the CGL policy. This does necessitate an interpretation of the staffing agreement at all. The CGL policy was issued in Kentucky, to a business running a factory in Kentucky. Kentucky law applies.

10

is performed. While not directly accepted by the Kentucky Supreme Court, this argument has been adopted by the Kentucky Court of Appeals, which this Court views as persuasive. *Kentucky Farm Bureau Mut. Ins. Co. v. Blevins*, 268 S.W.3d 368 (Ky. App. 2008); *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005) ("Intermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently.").

Defendants cite *American Towers LLC v. BPI, Inc.*, 130 F. Supp. 3d 1024, 1034 (E.D. Ky. 2015), to support their argument that a breach of contract claim can trigger coverage under a CGL policy requiring an "occurrence." Applying West Virginia law, Judge Thapar held that a breach-of-contract claim against a road builder constituted an "occurrence" under a CGL policy when a road collapsed. Judge Thapar reasoned that overly focusing on the theory of recovery overlooked the substance of the claim, which was based on construction defects. He emphasized that the Supreme Court of West Virginia had previously held in *Cherrington v. Erie Ins. Property and Cas. Co.*, 745 S.E.2d 508, 520 (W. Va. 2013), that a faulty construction claim did constitute an "occurrence." *Id.* at 519.

Here, however, the applicable law is that of Kentucky. Kentucky has explicitly held that faulty construction cases do not constitute an occurrence, and this Court has no similar state law

11

opinion to rely on as did Judge Thapar in *American Towers* to hold that a breach of contract constitutes an occurrence. Numerous other federal courts interpreting Kentucky law have routinely dismissed breach of contract claims, holding that such claims do not constitute an "occurrence." *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 582 (6th Cir. 2001); *Hayden v. Benchmark Insurance Company*, 3:19-CV-00154-JHM, 2019 WL 3070315, at *4 (W.D. Ky. July 12, 2019); *Nautilus Ins. Co. v. Structure Builders & Riggers Machinery Moving Div., LLC*, 784 F. Supp. 2d 767, 772 (E.D. Ky. 2011).

The Court has no reason to believe the Kentucky Supreme Court would hold differently. The damages in the breach of contract claim are tied to bodily injury; however, the mere fact that Collins was injured does not necessarily mean Miami Valley breached the staffing agreement with Crown. Put another way, Crown's complaint depends on the breach of the staffing agreement. Thus, Selective does not owe coverage for Crown's lawsuit against Miami Valley because, in Kentucky, a breach of contract claim is not an "occurrence."

Given this conclusion, the Court need not reach Selective's alternative arguments regarding exclusions found in the policy.

Therefore, having reviewed this matter, and the Court being advised,

**IT IS ORDERED** that, consistent with the above analysis: (1) Miami Valley's motion for summary judgment on its counterclaim for a declaratory judgment (Doc. 76) be, and is hereby, **DENIED IN PART**; (2) Crown and Zurich's motion for partial summary judgment and declaratory judgment (Doc. 77) be, and is hereby, **DENIED**; and (3) Selective's motion for summary judgment (Doc. 76) be, and is hereby, **GRANTED IN PART**. The balance of any motions decided in part remain under submission insofar as they relate to coverage for the Collins action.

A declaratory judgment as to the Crown action shall enter concurrently herewith.

This 11th day of January 2021.



Signed By:
*William O. Bertelsman* WOB
United States District Judge